PENNSYLVANIA STEEL CO. et al. v. NEW YORK CITY RY. CO. et al.

HEMPHILL et al. v. SAME.

(Circuit Court of Appeals, Second Circuit. April 14, 1913.)

No. 199.

STREET RAILROADS (§ 49*) — LEASES — INSOLVENCY — INTEREST ON BONDS OF LESSOR COMPANY.

A lease of the property of a street railroad company to an insolvent provided that the lessee from time to time should pay all rents and other sums of money that might become due under or by reason of the lease and other contracts to which the lessor was a party, or to which any of the demised property was or might be subject, and that the lessee assumed all obligations of the lessor under such lease and contracts, and agreed to pay all interest and fixed charges on the lessor's funded debt, provided that the lessee should not be required to pay the principal of the lessor's funded obligations, except as provided in the contract, and that all rentals or other payments so made should be proportioned between the period preceding and succeeding the date of the lessee's taking possession under the lease. *Held* that, while a payment of interest on the lessor's funded obligations by the lessee was in the nature of rent, the lease did not constitute an absolute obligation on the part of the lessee to assume and pay such interest, without limit as to time, and it was only bound to pay the same up to the date of the termination of the lease.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 125, 126; Dec. Dig. § 49.*]

Appeal from the District Court of the United States for the Southern District of New York; E. Henry Lacombe, Judge.

Suit in equity by the Pennsylvania Steel Company and another against the New York City Railway Company and others. From an order (189 Fed. 661) confirming the report of a special master and disallowing a claim presented against the railway company by Alexander J. Hemphill and others, as holders of the first consolidated mortgage bonds of the Second Avenue Railroad Company, they appeal. Affirmed.

See, also, 198 Fed. 721, 117 C. C. A. 503.

The claim in question is similar to that presented against the estate of the Metropolitan Street Railway Company which was considered by this court in the case of the Second Avenue Bondholders' Appeal, 198 Fed. 747, 117 C. C. A. 503, to which reference may be had for a statement of the facts common to the two cases. The claim particularly as against the estate of the City Company is based upon a provision of the lease from the Metropolitan Company to the City Company which was examined in different phases in the series of appeals of which the case referred to was one. This provision reads as follows:

"The lessee shall also from time to time pay or cause to be paid, all rentals and other sums of money which are or may be or become due or payable under or by reason of any leases and other contracts to which the lessor is a party or to which any of the demised property is or may be subject, and the lessee hereby assumes all the obligations of the lessor under all such leases and contracts, and the lessee agrees to pay all interest upon the funded debt of the lessor and other fixed charges of the lessor, provided that the lessee shall not be required to pay the principal of any funded obligations of the lessor or of its subsidiary companies except as hereinafter provided. All rentals and other payments made, as in this and the preceding

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
204 F.—33

article provided, shall be apportioned between the periods respectively preceding and succeeding the date of taking possession hereunder."

As shown in the Second Avenue Bondholders' Appeal, supra, the Metropolitan estate was liable to the bondholders of the Second Avenue Railroad Company—the owner of one of its leased roads—upon a guaranty of the interest upon its mortgaged bonds and the contention of the claimants in the present case is that the City Company, as the lessee of the Metropolitan Company, by virtue of the words in the above provision, "and the lessee hereby assumes all the obligations of the lessor under all such leases and contracts," became bound to an absolute and unconditional assumption of the contract of guaranty without regard to the continued existence of the Metropolitan-City lease. The judge at circuit, however, ruled in respect of the last contention as follows:

"As to the various agreements of the New York City Company to pay all the various sums of money which its lessor, the Metropolitan, was obligated to pay from time to time in order to maintain possession of the various subsidiary roads which made up its system, and all other sums which it agreed to pay to persons designated by its lessor, I am very clearly of the opinion that, by whatever name called, they are in reality rental agreed to be paid for the use of the property leased, and, upon the termination of the lease, shall be treated accordingly."

The claimants have appealed to this court.

Davies, Auerbach, Cornell & Barry, of New York City (Brainerd Tolles and Julien T. Davies, both of New York City, of counsel), for appellants.

Dexter, Osborn & Fleming, of New York City (M. C. Fleming, of New York City, of counsel), for Ladd, as receiver, etc.

Byrne & Cutcheon of New York City (J. Byrne, C. Taylor, and C. M. Travis, all of New York City, of counsel), for Pennsylvania Steel Co.

G. N. Hamlin, M. J. O'Brien, and C. E. Rushmore, all of New York City, for contract creditors' committee.

Before COXE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). An agreement to assume a debt is undoubtedly an agreement to pay it. A promise by a grantee under an absolute conveyance to assume a definite obligation of the grantor imports an unqualified undertaking to pay. There is no uncertainty as to the promisor's interest or as to the extent of his obligation. So an undertaking by a lessee to pay an amount due upon a mortgage upon the leased property might be regarded as unconditional. Although the leasehold estate would be subject to termination the possibility of that event might not affect the fixed obligation. Conversely a promise by an absolute grantee to meet a continuing charge upon the property might be unqualified. The obligation might run but the promisor's interest would be fixed. Nothing could happen to render doubtful an intention to keep up the payments. But the present case is very different. The agreement of the City Company to assume the Metropolitan's obligation to pay the bond interest—including that in question—was an agreement to pay such interest but was indefinite as to how long it was to last. The intention of the parties was not clear. The language of the assumption provision taken by itself might—on the

one hand—import an obligation to pay the interest regardless of any use by the lessee of the property upon which it was a charge. But it would not necessarily mean this. In view of the very nature of a lease, the language might import no more than a duty running during its existence. There was an obligation to pay. But for how long a time? Resort must be had to the instrument as a whole.

In interpreting the instrument we must start out with the proposition stated by this court in the Metropolitan Stockholders' Appeal, 198 Fed. 764, 117 C. C. A. 546, that "an intention to hold a lessee for future payments after it has ceased to use and enjoy the thing leased—in the nature of a forfeiture—must be made very plain to be found." See, also, Lamson Consolidated Store Service Co. v. Bowland, 114 Fed. 639, 52 C. C. A. 335; Jesup v. Illinois Central R. Co. (C. C.) 43 Fed. 483; Garnsey v. Rogers, 47 N. Y. 233, 7 Am. Rep. 440. Is it then made very plain in this lease that the lessee is to pay this bond interest after it ceases to use the leased property? It is not so expressly provided and we think it cannot be implied. We find nothing in the different provisions showing that the parties contemplated any obligation continuing after the termination of the lease. The implication from the provision that no entry should impair the lessor's claims for payments due and unpaid, is rather the other way. The fact that the lessee did not assume the principal of the mortgage debts but confined itself to running obligations seems also indicative of an intention merely to place the lessee in the lessor's shoes so long as the lease should exist. Moreover no reasons appear—either within or without the lease—why either party should have wished to place a millstone about the lessee's neck—as the briefs express it—for the benefit of bondholders who had nothing to do with the execution of the lease. Furthermore no special equities are shown —as in some cases—in favor of these bondholders. It does not appear that they changed their position on account of the lease. Taking the lease as a whole we think that the failure to specify the duration of the lessee's obligation upon the assumption provision, did not indicate an intention that it should go on forever; that the payments stipulated to be made constituted part of the consideration for the use of the demised property, and that the promise to make them was, in its essence, a rent covenant limited to the existence of the lease.

We give due consideration to the contention that if the assumption of the interest payments amounts only to an agreement to pay rental, it adds nothing to the preceding express agreement to pay all rentals. Legal instruments, however, often cover the same subject twice. Precaution invites repetition. The rule that different provisions of a contract should be given different meanings is never carried so far as to do violence to the plain intent of the parties. And if there be a difference between an agreement to pay moneys to become due under a lease and an agreement to assume the obligations under such lease, it does not necessarily follow that the one runs longer than the other. An undertaking may not be a rent covenant in the strictest sense and yet terminate with the lease.

Holding, then, that the obligation to pay the interest coupons in question did not continue after the termination of the Metropolitan-City lease, we come to the inquiries: When did it terminate? What was unpaid when it terminated? The first coupon which was not paid fell due August 1, 1908, and it is practically conceded by all that the lease terminated not later than July 31, 1908. Consequently it must be held that no obligation against the City Company ever accrued. And this is not deciding the matter upon a technicality. Although.there had been no formal action the lease was substantially terminated long before July 31st. Indeed we think that any idea that it would be continued was given up by all parties in interest even before February when the interest included in the August coupons began to run.

The order of the District Court is affirmed with costs.